UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SHANNON KASBY,**

       **Plaintiff,**

**v.**                                                                     **Case No:  6:11-cv-152-Orl-36GJK**

**UPPER DECK BAR AND GRILL, LLC, NSB
FISH HOUSE, LLC, DANNY HUNT,**

       **Defendants.**

_____

REPORT AND RECOMMENDATION

      This cause came on for consideration without oral argument on the following motion filed herein:

> | | |
> |---|---|
> | **MOTION:** | **PLAINTIFF'S RENEWED MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS (Doc. No. 65)** |
> | **FILED:** | **July 24, 2013** |
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

**I.   BACKGROUND.**

      **A.  The Complaint.**

      On January 31, 2011, Shannon Kasby ("Kasby"), on his own behalf and others similarly situated, instituted this action against Upper Deck Bar and Grill, LLC ("Upper Deck"), NSB Fish House, LLC ("Fish House"), and Danny Hunt ("Hunt") (collectively, the "Defendants") alleging violations of the overtime provisions of the Fair Labor Standards Act (the "FLSA").  Doc. No. 1.

On April 23, 2012, Andre Evans ("Evans") filed a consent to join in this action as an opt-in plaintiff.  Doc. No. 34.  On October 5, 2012, Kasby filed an amended complaint (the "Complaint").  Doc. No. 48.

### B.  Entry of Default as to Upper Deck and Fish House.

On March 14, 2012, Upper Deck and Fish House filed an answer.  Doc. No. 23.  On May 23, 2012, counsel for Upper Deck and Fish House filed a motion to withdraw.  Doc. No. 38.  On June 3, 2012, the Court entered an order denying counsel's motion to withdraw, and directed Upper Deck and Fish House to retain substitute counsel within fourteen (14) days and have substitute counsel file a notice of appearance within fourteen (14) days.  Doc. No. 39.  The Court admonished Upper Deck and Fish House that failure to retain substitute counsel may result in their pleadings being stricken and default entered against them.  Doc. No. 39.  On June 25, 2012, counsel for Upper Deck and Fish House filed a renewed motion to withdraw.  Doc. No. 41.  On September 26, 2012, the Court entered an order granting the renewed motion to withdraw, and ordered that the answer (Doc. No. 23) be stricken, and directed the Clerk to enter default against Upper Deck and Fish House. Doc. No. 45.  Subsequently, the Clerk entered default against Upper Deck and Fish House.  Doc. No. 53.

### C.  Entry of Default as to Hunt.

On April 19, 2012, Kasby filed a motion alleging that Hunt was evading service, and requested permission to serve Hunt via substitute service.  Doc. No. 33.  On September 26, 2012, the Court entered an order granting in part and denying in part Kasby's April 19, 2012 motion.  Doc. No. 44.  The Court determined that it could not grant Kasby's requested relief because Kasby had not complied with the requirements for substitute service under Florida law.  Doc. No. 44 at 6.  The Court noted, among other things, that "[i]n order to comply with Florida law,

Kasby must first file an amended complaint" alleging Hunt was evading service. Doc. No. 44 at 6-7. Accordingly, the Court granted Kasby's motion to the extent that Kasby was permitted to file an amended complaint within fourteen (14) days to allege that Hunt was evading service. Doc. No. 44 at 7. On October 5, 2012, Kasby filed the amended Complaint against Defendants alleging violations of the overtime provisions of the FLSA and evasion of service by Hunt. Doc. No. 48. On or about October 15, 2012, Kasby perfected service on Hunt via the Florida Secretary of State. *See* Doc. Nos. 50, 50-1, 50-2, 50-3, 50-4, 54 at 1, 55 at 1. On April 28, 2013, Kasby moved for entry of default against Hunt. Doc. No. 55. On April 29, 2013, the Clerk entered default against Hunt. Doc. No. 57.

### D. Motion for Default Judgment.

On July 24, 2013, Kasby and Evans (collectively, the "Plaintiffs") filed a Renewed Motion for Entry of Final Default Judgment Against Defendants (the "Motion"). Doc. No. 65. The Motion seeks judgment against the Defendants, jointly and severally, for a total amount of $111,140.57 plus interest, which represents $72,960.00 to Kasby for unpaid overtime wages and liquidated damages, $15,394.32 to Evans for unpaid overtime wages and liquidated damages, and $22,786.25 in attorney fees and costs. Doc. No. 65 at 11.

### II.   STANDARD OF REVIEW.

When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). However, the mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. *Nishimatsu Constr. Co., Ltd., v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.

1975).[1]  Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered.  *Id.*; *see Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal.  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206).  Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Notwithstanding the propriety of default judgment against a defendant, it remains incumbent on a plaintiff to prove the amount of damages to which he or she is entitled.  "While well-pleaded facts in the complaint are deemed admitted, plaintiff's allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages."  *Virgin Records America, Inc. v. Lacey*, 510 F.Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *Whole Space Indus., Ltd. v. Gulfcoast Int'l Prods., Inc.*, Case No. 2:09-cv-217-UA-SPC, 2009 WL 2151309, at *3 (M.D. Fla. July 13, 2009) (same).

Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]"  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

damages on default judgment, where requested damages were speculative and not proven by a fair preponderance of the evidence).

The Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id*. at 1232 n.13; *see also Wallace v. The Kiwi Group, Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

## III. ANALYSIS.

### A. FLSA.

An employee engaged in interstate commerce must be paid an overtime wage of one and one-half times his or her regular rate for all hours he or she works in excess of forty (40) hours per week. 29 U.S.C. § 207(a). If an employee is not paid the statutory wage, the FLSA creates a private cause of action for that employee against his or her employer for the recovery of unpaid overtime wages and an equal amount of liquidated damages if the failure to pay overtime wages is found to be willful. *Id*. §§ 216(b), 260. To establish a prima facie case of liability for unpaid overtime compensation under the FLSA, the plaintiff must demonstrate the following: 1) defendant employed him or her; 2) either (a) he or she was engaged in interstate commerce, or

(b) defendant is an enterprise engaged in interstate commerce; 3) he or she worked over forty (40) hours a week; and 4) defendant did not pay him or her all of their overtime wages. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008).

### 1. Employment.

As defined by the statute, and subject to certain exceptions not at issue here, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statutory definition of "employer" is similarly broad as it encompasses both the employer for whom the employee directly works as well as "any person acting directly or indirectly in the interests of an employer in relation to an employee." *Id*. § 203(d). Given the broad definition of "employer," an employee "may file suit directly against an employer that fails to pay him or her the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986)).

#### a. Upper Deck and Fish House.

The Complaint alleges that Upper Deck and Fish House are joint employers of Plaintiffs. Doc. No. 48 at ¶ 8. An employee may have more than one employer, and "whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a). According to the Code of Federal Regulations, "[w]here the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek," a joint employment relationship will generally be found to exist in the following situations:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

*Id.* § 791.2(b) (footnotes omitted). In addition to the guidance provided by the Code of Federal Regulations, courts also look to the economic realities of the employment relationship at issue. *See Layton v. DHL Express, Inc.*, 686 F.3d 1172, 1175-1181 (11th Cir. 2012) (considering 29 C.F.R. § 791.2 and the multi-factor economic realities test in determining the existence of a joint employer relationship); *see also Gerondidakis v. BL Rest. Operations, LLC*, Case No. 8:12-cv-96-EAK-MAP, 2012 WL 2872849, at *6 (M.D. Fla. July 12, 2012) (same). In considering the economic realities of the employment relationship "the court will consider factors such as control, supervision, right to hire and fire, ownership of work facilities, investment, and pay-roll decisions." *Cornell v. CF Center, LLC*, 410 F. App'x 265, 268 (11th Cir. 2011).[2]

The Complaint alleges and Plaintiffs aver that they were employed by Defendants to perform non-exempt cooking duties. Doc. Nos. 48 at ¶¶ 2, 11, 65-1 at ¶¶ 1, 4, 65-2 at ¶¶ 1, 4. The Complaint further alleges that Upper Deck and Fish House are joint employers. Doc. No. 48 at ¶ 8. Specifically, the Complaint alleges that Upper Deck and Fish House have shared employees, have common management, have acted in the direct interest of each other towards a collective interest, and have exercised common control over operations. Doc. No. 48 at ¶ 8.

---

[2] In this circuit, "unpublished opinions are not binding precedent but they may be cited as persuasive authority." *See* 11th Cir. R. 36-2; *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004).

Accepting these allegations as true, the undersigned finds that Plaintiffs have sufficiently demonstrated employment with Upper Deck and Fish House, and that such employment was joint. As joint employers, Upper Deck and Fish House are jointly and severally liable for any damages that result from violations of the FLSA. *See* 29 C.F.R. § 791.2(a) ("all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]").

### b. Hunt.

Whether an individual is an "employer" under the FLSA "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'" *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). Specifically, courts assess the "economic reality of the relationship between the parties" to determine whether an individual is an "employer" under the FLSA. *Rodriguez v. Jones Boat Yard, Inc.*, 435 F. App'x 885, 888 (11th Cir. 2011) (quoting *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997)). In conducting this analysis, the court considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*; *see Patel*, 803 F.2d at 638 ("To be personally liable [for violations of the FLSA's overtime provisions], an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.").

The Complaint alleges that Hunt is an "employer" under the FLSA. Doc. No. 48 at ¶ 10. Specifically, the Complaint alleges that Hunt "managed and/or operated" Upper Deck and Fish House and that he "regularly exercised the authority to hire and fire employees, determine the

work schedules of employees, set the rate of pay of employees, and/or control the finances and operations of" Upper Deck and Fish House. Doc. No. 48 at ¶ 10. Likewise, Plaintiffs each aver that Hunt set work hours, made decisions about how employees were paid, and oversaw the operations at Upper Deck and Fish House. Doc. Nos. 65-1 at ¶ 3, 65-2 at ¶ 3. Accepting these allegations and averments as true, the undersigned finds that Plaintiffs have sufficiently demonstrated that Hunt is an "employer" under the FLSA. As Plaintiffs' "employer," Hunt is jointly and severally liable for any damages that result from violations of the FLSA. *See, e.g.*, *Patel*, 803 F.2d at 637-8 (finding that an individual "employer" with operational control over a covered enterprise is an employer along with the covered enterprise, and jointly and severally liable under the FLSA for unpaid wages).

### 2. Coverage.

In order to be eligible for overtime wages under the FLSA, an employee must demonstrate that he or she is covered by the FLSA. *Josendis*, 662 F.3d at 1298. An employee may demonstrate that he or she is covered under the FLSA's overtime provisions by demonstrating one of the following: 1) he or she was engaged in commerce or in the production of goods for commerce (i.e., individual coverage); or 2) that the employer was engaged in commerce or in the production of goods for commerce (i.e., enterprise coverage). 29 U.S.C. § 207(a); *Josendis*, 662 F.3d at 1298-9.

Here, the Complaint only alleges enterprise coverage. Doc. No. 48 at ¶¶ 6-7, 9. An enterprise is engaged in commerce or in the production of goods for commerce if it meets the following requirements:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]

29 U.S.C. § 203(s)(1)(A)(i)-(ii). A court "cannot presume for enterprise coverage either that the employer was involved in interstate commerce or that the employer grosses over $500,000 annually." *De Lotta v. Dezenzo's Italian Rest., Inc.*, Case No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *2 (M.D. Fla. Nov. 24, 2009) (citing *Sandoval v. Fla. Paradise Lawn Maint., Inc.*, 303 F. App'x 802, 805 (11th Cir. 2008)).

The Complaint alleges that at all relevant times Upper Deck and Fish House have had two (2) or more employees regularly selling, handling, or otherwise working on goods and/or materials that have been moved in or produced for interstate commerce. Doc. No. 48 at ¶¶ 6, 9. The Complaint further alleges that at all relevant times "the annual gross sales volume of [Upper Deck and Fish House] was in excess of $500,000.00 per annum[.]" Doc. No. 48 at ¶ 7. Accepting these allegations as true, the undersigned finds that Plaintiffs have sufficiently demonstrated enterprise coverage with respect to Upper Deck and Fish House.

### 3. Hours of Work per Week.

The Complaint alleges that Plaintiffs worked in excess of forty (40) hours per week during their employment with Defendants. Doc. No. 48 at ¶¶ 11-13. Likewise, Plaintiffs each aver that they worked in excess of forty (40) hours per week during their employment with Defendants. Doc. Nos. 65-1 at ¶¶ 5-6, 65-2 at ¶¶ 5-6. Accepting the allegations and averments as true, the undersigned finds that Plaintiffs have sufficiently demonstrated that they worked in excess of forty (40) hours per week while employed by Defendants.

### 4. Unpaid Overtime.

The Complaint alleges that Plaintiffs were not paid overtime wages. Doc. No. 48 at ¶¶

11, 14. Likewise, Plaintiffs each aver that they were not paid overtime wages. Doc. Nos. 65-1 at ¶¶ 5-6, 65-2 at ¶¶ 5-6. Accepting the allegations and averments as true, the undersigned finds that Plaintiffs have sufficiently demonstrated that Defendants did not pay them overtime wages.

In light of the foregoing, it is **RECOMMENDED** that the Court find that Plaintiffs have sufficiently established that Defendants violated the FLSA's overtime provisions, and that Defendants' are jointly and severally liable for any damages resulting therefrom.

### B. Damages.

Pursuant to 29 U.S.C. § 207(a)(1), Plaintiffs were entitled to be paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours during a work week. A plaintiff may establish his or her damages by affidavit. *See Adolph Coors*, 777 F.2d at 1544 ("Damages may be awarded only if the record adequately reflects the basis for [an] award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'") (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). Additionally, an employer who willfully violates the provisions of the FLSA is liable for an equal amount of liquidated damages. 29 U.S.C. §§ 216(b), 260.

Plaintiffs provide affidavits in support of their claimed damages. Doc. Nos. 65-1, 65-2. Kasby avers that he was employed by Defendants between April 2009 and August 2010. Doc. No. 65-1 at ¶ 1. The following chart reflects Kasby's rate of pay during his employment with the Defendants:

| Dates | Rate of Pay |
| --- | --- |
| April – May 2009 | $8.00 – $10.00 per hour |
| June – July 2009 | $400.00 per week |
| July – April 2010 | $500.00 per week |

| | |
|---|---|
| May – August 2010 | $600.00 per week |

Doc. No. 65-1 at ¶¶ 1, 6.[3] Kasby avers that he worked an average of thirty-two (32) overtime hours per week during the weeks he earned salaried wages, and was never paid overtime wages for any hours worked in excess of forty (40) hours during the weeks he worked as a salaried employee for Defendants. Doc. No. 65-1 at ¶¶ 6, 8.[4] As a result, Kasby avers that he is owed a total of $36,480.00 in unpaid overtime, which he calculates as follows: $3,840.00 ($15.00 per hour ($400.00/40 hours = $10.00 x 1.5) x 32 OT hours per week x 8 weeks) + $24,000.00 ($18.75 per hour ($500.00/40 hours = $12.50 x 1.5) x 32 OT hours per week x 40 weeks) + $8,640.00 ($22.50 per hour ($600.00/40 hours = $15.00 x 1.5) x 32 OT hours per week x 12 weeks) = $36,480.00 in unpaid overtime wages. Doc. No. 65-1 at ¶ 8. Further, the Complaint alleges that Defendants' failure to pay Kasby overtime wages was willful, and requests an award of liquidated damages. Doc. No. 48 at ¶¶ 26, 28. The Motion likewise requests an award of liquidated damages totaling $36,480.00. Doc. No. 65 at ¶ 28. By virtue of Defendants' default, Defendants admit that their failure to pay Kasby overtime wages was willful. Therefore, Kasby is entitled to liquidated damages in the amount requested. Accordingly, it is **RECOMMENDED** that the Court find that Kasby has presented sufficient evidence to establish the amount of his damages.

Evans avers that he was employed by Defendants between March 2010 and September 2010. Doc. No. 65-2 at ¶ 1.[5] The following chart reflects Evans' rate of pay during his

---

[3] In addition to Kasby's affidavit, Plaintiffs attached copies of two of Kasby's paystubs. Doc. No. 65-1 at 5. The first paystub indicates that Kasby was paid $1,000.00 for working at Upper Deck between December 15, 2009 and December 28, 2009. Doc. No. 65-1 at 5. The second paystub indicates that Kasby was paid $1,200.00 for working at Fish House between August 24, 2010 and September 6, 2010. Doc. No. 65-1 at 5.

[4] Kasby only seeks unpaid overtime wages for the period of time he worked as a salaried employee for Defendants. *See* Doc. Nos. 65 at ¶ 26, 65-1 at ¶ 8.

[5] Specifically, Evans avers that he was employed by Fish House and Hunt. Doc. No. 65-2 at ¶ 1. However, since

employment with Defendants:

| Dates | Rate of Pay |
|---|---|
| March – August 2010 | $350.00 per week |
| September 2010 | $400.00 per week |

Doc. No. 65-2 at ¶ 6.[6] Evans avers that he worked an average of twenty-seven (27) overtime hours per week for twenty-one (21) weeks, and was never paid overtime wages for any hours worked in excess of forty (40) hours during those twenty-one (21) weeks. Doc. No. 65-2 at ¶¶ 6-7. As a result, Evans avers that he is owed a total of $7,697.16 in unpaid overtime wages, which he calculates as follows: $5,672.16 ($13.13 per hour ($350.00/40 hours = $8.75 x 1.5) x 27 OT hours per week x 16 weeks) + $2,025.00 ($15.00 per hour ($400.00/40 hours = $10.00 x 1.5) x 27 OT hours per week x 5 weeks) = $7,697.16 in unpaid overtime wages. Doc. No. 65-2 at ¶ 7. Further, the Complaint alleges that Defendants' failure to pay Evans overtime wages was willful, and requests an award of liquidated damages. Doc. No. 48 at ¶¶ 26, 28. The Motion likewise requests an award of liquidated damages totaling $7,697.16. Doc. No. 65 at ¶ 28. By virtue of Defendants' default, Defendants admit that their failure to pay Evans overtime wages was willful. Therefore, Evans is entitled to liquidated damages in the amount requested. Accordingly, it is **RECOMMENDED** that the Court find that Evans has presented sufficient

---

Plaintiffs have demonstrated that Upper Deck and Fish House were joint employers, the undersigned finds that Evans was employed by all Defendants.

[6] In addition to Evans' affidavit, Plaintiffs' attached copies of five of Evans' paystubs. Doc. No. 65-2 at 4-6. The first paystub indicates that Evans was paid $800.00 for working at Fish House between July 27, 2010 and August 9, 2010. Doc. No. 65-2 at 4. The second paystub indicates that Evans was paid $700.00 for working at Fish House between July 13, 2010 and July 26, 2010. Doc. No. 65-2 at 4. The third paystub indicates that Evans was paid $800.00 for working at Fish House between June 29, 2010 and July 12, 2010. Doc. No. 65-2 at 5. The fourth paystub indicates that Evans was paid $700.00 for working at Fish House between June 15, 2010 and June 28, 2010. Doc. No. 65-2 at 5. The fifth paystub indicates that Evans was paid $700.00 for working at Fish House between May 4, 2010 and May 17, 2010. Doc. No. 65-2 at 6.

evidence to establish the amount of his damages.

### C. Attorney Fees.

The FLSA mandates that in any action brought by an employee to enforce Sections 206 or 207 of the Act, the Court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Plaintiffs request $19,992.50 in attorney fees. Doc. Nos. 65 at ¶ 32, 65-3 at 2, 6-17. Upon independent review of the evidence presented in support of the requested fees, the undersigned finds that Plaintiffs are not entitled to all of their requested fees. Specifically, the undersigned finds that Plaintiffs are not entitled to any fees stemming from orders to show cause (Doc. Nos. 13, 54) entered against them. *See Taylor v. Advanced Quality Transp. Serv., Inc.*, Case No. 2:09-cv-50-FtM-29SPC, 2010 WL 1838304, at *3 (M.D. Fla. Apr. 13, 2010) (not awarding fees relating to party's review and response to order to show cause). As a result, Plaintiffs' request for attorney fees should be reduced by a total of $770.00.[7]  Accordingly, it is **RECOMMENDED** that the Court reduce Plaintiffs' request for attorney fees by $770.00, and award Plaintiffs $19,222.50 in attorney fees.

### D. Costs.

The FLSA mandates that in any action brought by an employee to enforce Sections 206 or 207 of the Act, the Court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow … costs of the action." 29 U.S.C. § 216(b). In FLSA cases, courts may award those costs permitted by 28 U.S.C. § 1920. *See Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988) (finding that "nothing in the legislative history associated with Section

---

[7] Specifically, Plaintiffs incurred the following fees relating to orders to show cause entered against them: 1) $467.50 for drafting a response to the order to show cause entered on January 11, 2011 (Doc. No. 65-3 at 8); 2) $27.50 for the receipt and review of the order to show cause entered on April 15, 2013 (Doc. No. 65-3 at 16); and 3) $275.00 for drafting a response to the order to show cause entered on April 15, 2013 (Doc. No. 65-3 at 16). These fees total $770.00.

216(b)'s passage suggests that Congress intended the term "costs of the action" to differ from those costs as now enumerated in 28 U.S.C.A § 1920"). Pursuant to Section 1920 the Court may tax the following as costs: 1) fees of the clerk and marshal; 2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; 3) fees and disbursements for printing and witnesses; 4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; 5) docket fess under section 1923 of this title; and 6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services. 28 U.S.C. § 1920. A court may not award costs "in excess of those permitted by Congress under 28 U.S.C. § 1920." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002).

Plaintiffs request $2,793.75 in costs, which represents $350.00 for the filing fee, $953.75 for service of process, and $1,490.00 in legal research. Doc. Nos. 65 at ¶ 35, 65-3 at ¶ 10. The filing fee and costs of service of process are both reasonable and taxable. *See* 28 U.S.C. § 1920(1); *see also Family Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp*, Case No. 8:11-cv-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) (finding that filing fees fall within the category of "[f]ees of the clerk and marshal."), and *EEOC v. W & O, Inc.*, 213 F.3d 600, 623-24 (11th Cir. 2000) (holding that costs associated with service of process by the U.S. Marshals and a private process server may be taxed pursuant to 28 U.S.C. §§ 1920(1), 1921).[8] Costs associated with legal research, however, are not taxable. *E.g.*, *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, Case No. 6:05-cv-269-Orl-28JGG, 2007 WL 842771, at *10 (M.D. Fla. Mar. 20, 2007) (not awarding costs associated with legal research in FLSA case).

---

[8] Although Plaintiffs provide no explanation as to how they incurred $953.57 in costs for service of process, the reasonableness of this cost is nonetheless determinable based on a review of the record. In particular, the record reveals that much of the costs associated with service of process were incurred as a result of multiple attempts to serve process on Hunt, who was allegedly evading service. *See* Doc. No. 48 at ¶¶ 17-22.

Accordingly, it is **RECOMMENDED** that the Court reduce Plaintiffs' request for cost by $1,490.00, and award Plaintiffs $1,303.75 in costs.

## IV.   CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that:

1. The Motion (Doc. No. 65) be **GRANTED** as follows:

    a. The Court enter judgment in favor of Kasby and against Defendants, jointly and severally, in the total amount of $72,960.00, which represents $36,480.00 in unpaid overtime wages and $36,480.00 in liquidated damages;

    b. The Court enter judgment in favor of Evans and against Defendants, jointly and severally, in the total amount of $15,394.32, which represents $7,697.16 in unpaid overtime wages and $7,697.16 in liquidated damages;

    c. The Court enter judgment in favor of Kasby and Evans and against Defendants, jointly and severally, in the total amount of $20,526.25, which represents $19,222.50 in attorney fees and $1,303.75 in costs; and

    d. Post-judgment interest at the legal rate;[9]

2. Otherwise, **DENY** the Motion (Doc. No. 65); and

3. Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

---

[9] Post-judgment interest is recoverable for violations of the FLSA. *E.g.*, *Ramirez v. Raptor Tech. Grp., Inc.*, Case No. 5:12-cv-100-Oc-34TBS, 2012 WL 1758134, at *5 (M.D. Fla. May 2, 2012).

Recommended in Orlando, Florida on October 22, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy